**JUDGE PAUL MEYER**

**RECEIVED**

MAGISTRATE JUDGE SCHNEIDER

**PC SCAN**

12/3/2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Marcus R. Burton Sr. # Y-58071

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

**24CV50488**

vs.

(CNA) Danielle Hoffman,

IDOC, LaToya Hughes, Warden

Andrea Tack, Warden Arthur Manzano,

(HCUA) Monica Carpenter, ADA Coord.

Ms. Perez, Wexford Healthcare Sources

Inc., Sgt. Christopher Wheeler, Sgt. Conley

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

Case No: _____

(To be supplied by the Clerk of this Court)

Sgt. Mitch Wakeley, Sgt Potter,
Sgt. Jonathan Frederick; c/o Dylan
Shopp, c/o Tristan Shaw, c/o Megan
Skrzypinski, c/o Jonathan Piper,
c/o Powers, c/o Ackert, Dr.
Larry Ogsy, NP Susan Tuell,
NP Chelsa Sword, RN Laura
Emmole, RN S. Jackson, RN Sproles,
RN Forbes, CNA Haley Decrane,
CNA Whitney Wilson, CNA Joseph
Bonnell, CNA Grossman, Counselor
B. Deneve, OMHS Amy Watson
ARB Jon Loftus In there Indual
and official capacities are being sued

CHECK ONE ONLY:

✓ _____ **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
U.S. Code (state, county, or municipal defendants)

_____ **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
28 SECTION 1331 U.S. Code (federal defendants)

_____ **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

Correspondent, United States District Court, 219 S. Dearborn Street, Chicago IL 60604. Complaints concerning claims arising at the Dixon Correctional Center should be sent to the Clerk, United States District Court, 327 S. Court Street, Rockford, IL 61101. Always keep the court informed of your address; failure to do so may result in dismissal of your case.

Revised: 03/19/15

III.    Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.    Is there a grievance procedure available at your institution?

YES (X)   NO ( )   If there is no grievance procedure, skip to F.

B.    Have you filed a grievance concerning the facts in this complaint?

YES (X)   NO ( )

C.    If your answer is **YES**:

1.    What steps did you take?

I filed the grievance procedures according to institutional directives and PLRA

2.    What was the result?

The grievances were denied and not resolved

3.    If the grievance was not resolved to your satisfaction, did you appeal? What was the result (if there was no procedure for appeal, so state.)

YES, I appealed and ARB denied grievances that is why I'm filing 1983 complaint

D.    If your answer is NO, explain why not:

3

I.     Plaintiff(s):

    A.     Name: Marcus Ross Burton Sr.

    B.     List all aliases: None

    C.     Prisoner identification number: Y-58071

    D.     Place of present confinement: Dixon Correctional Center

    E.     Address: 2600 N. Brinton Ave Dixon, Il 61021

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II.     Defendant(s):

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

    A.     Defendant: Danielle Hoffman

           Title: Certified Nursing Assistant

           Place of Employment: Dixon CC / via Wexford Healthcare Sources

    B.     Defendant: Illinois Department of Corrections

           Title: Department of Corrections / state of Illinois

           Place of Employment: The State of Illinois

    C.     Defendant: La Toya Hughes

           Title: Director of Illinois Dept. of Corrections

           Place of Employment: State of Illinois

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

D. DEFENDANT: Andrea Tack
Title: Warden/chief Administrative Officer
Place of Employment: Dixon cc/state of Illinois

E. DEFENDANT: Arthur MANZZANO
Title: Warden/Warden of Programs
Place of Employment: Dixon cc/state of Illinois

F. DEFENDANT: Monica Carpenter-(Fuller)
Title: Healthcare Unit Administrator
Place of Employment: Dixon cc/state of Illinois

G. DEFENDANT: Ms. Perez
Title: ADA Coordinator
Place of Employment: Dixon cc/Wexford Healthcare Sources Inc.

H. DEFENDANT: Christopher Wheeler
Title: Sergeant
Place of Employment: Dixon cc/state of Illinois

I. DEFENDANT: Mr. Conley
Title: Sergeant
Place of Employment: Dixon cc/state of Illinois

J. DEFENDANT: Mitch Wakeley
Title: Sergeant
Place of Employment: Dixon cc/state of Illinois

K. DEFENDANT: Mr. Potter
Title: Sergeant
Place of Employment: Dixon cc/state of Illinois

L. DEFENDANT: Jonathan Frederick
Title: Sergeant
Place of Employment: Dixon cc / State of Illinois

M. DEFENDANT: Dylan Schopp
Title: Corrections Officer
Place of Employment: Dixon cc / state of Illinois

N. DEFENDANT: Tristan Shaw
Title: Corrections Officer
Place of Employment: Dixon cc / state of Illinois

O. DEFENDANT: Megan Skryzpinski
Title: Intel Officer
Place of Employment: Dixon cc / state of Illinois

P. DEFENDANT: Jonathan Piper
Title: Corrections Officer
Place of Employment: Dixon cc / state of Illinois

Q DEFENDANT: Mr. Powers
Title: Corrections Officer
Place of Employment: Dixon cc / state of Illinois

R. DEFENDANT: Mrs. Ackert
Title: Corrections Officer
Place of Employment: Dixon cc / state of Illinois

S. DEFENDANT: Dr. Larry OG Sy
Title: Medical Director
Place of Employment: Dixon cc / Wexford Healthcare Sources Inc.

T. DEFENDANT: Susan Tuell
TiTLE: Nurse PractitioNer
Place of Employment: Dixon CC/ Wexford Healthcare Sources Inc.

U. DEFENDANT: Chelsa Sword
TiTLE: Nurse PractitioNer
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

V. DEFENDANT: Laura Emmole
TiTLE: Registered Nurse
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

W. DEFENDANT: Mr. Sproles
TiTLE: Registered Nurse
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

X. DEFENDANT: Ms. S. Jackson
TiTLE: Registered Nurse
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

Y. DEFENDANT: Ms. Forbes
TiTLE: Registered Nurse
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

Z. DEFENDANT: Haley DeCrane
TiTLE: Certified Nursing Assistant
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

1. DEFENDANT: Whitney Wilson
TiTLE: Certified Nursing Assistant
Place of Employment: Dixon CC/Wexford Healthcare Sources Inc.

2. DEFENDANT: Joseph Bonnell
   Title: Certified Nursing Assistant
   Place of Employment: Dixon CC / Wexford Healthcare Sources Inc.

3. DEFENDANT: Mrs. Grossman
   Title: Certified Nursing Assistant
   Place of Employment: Dixon CC / Wexford Healthcare Sources Inc

4. DEFENDANT: Mrs. DeNeve
   Title: Grievance Counselor
   Place of Employment: Dixon CC / State of Illinois

5. DEFENDANT: Amy Watson
   Title: Mental Health Specialist
   Place of Employment: Dixon CC / Wexford Healthcare Sources Inc.

6. DEFENDANT: Jon Loftus
   Title: Administrative Review Board
   Place of Employment: Springfield / State of Illinois

= Addresses:

• Dixon CC: 2600 N. Brinton Ave. Dixon, Il 61021

• State of Illinois: 1301 Concordia Court Springfield, Il 62794

• Wexford Healthcare Sources Inc.: 501 Holiday Dr. Foster Plaza 4 Pittsburg, PA 15220

7. Defendant: Wexford Healthcare Sources Inc.
   Title: Medical Provider to IDOC: private entity
   Place of Employment: Dixon CC / State of Illinois

E.    Is the grievance procedure now completed?  YES (X)  NO ( )

F.    If there is no grievance procedure in the institution, did you complain to authorities?  YES ( )  NO ( )

G.    If your answer is **YES**:

    1.    What steps did you take?

_____

_____

_____

    2.    What was the result?

_____

_____

_____

H.    If your answer is **NO**, explain why not:

_____

_____

_____

4

IV.    List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A.    Name of case and docket number: Marcus R. Burton Sr. vs Tom Dart et al CASE No. 21-CV-6861

B.    Approximate date of filing lawsuit: December 2021

C.    List all plaintiffs (if you had co-plaintiffs), including any aliases: Marcus R. Burton Sr. (2021-0319129)

D.    List all defendants: Tom Dart, CCHS, Laura McDonald, C/o Cannon-Smith, Susan shebel, Sabrina Rivera-Canchola, Christopher Stadnicki, Martin Cahillane, Manisha Patel, Karen Jones

E.    Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): U.S District Court for the Northern District of Illinois Eastern Division

F.    Name of judge to whom case was assigned: Judge Sharon Johnson Coleman / Magistrate Judge Jeffrey T. Gilbert

G.    Basic claim made: Deliberate Indifference, A.D.A./ RA claim

H.    Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed as Confidential Settlement

I.    Approximate date of disposition: 9/10/23

IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.

A. Marcus R. Burton vs. Wexford et al

B. April 2024

C. Marcus R. Burton Sr.

D. Wexford Healthcare Sources Inc., HCUA Christine Vineyard, Dr. Percy Meyers, Dr. Glen Babich, TCO Mary Klien, Steve Bowman, RN Tammi Stauffer, ADA Coordinator Terri Schulte, Writ Coordinator Pam, C/o John Doe 1 & 2, IDOC, & Wexford Healthcare Sources Inc,

E. U.S. District Court for the Southern District of Illinois

F. Judge David W. Dugan / Magistrate Judge Reona J. Daley

G. Deliberate Indifference, ADA/RA

H. Is still ongoing & pending

I. Not Applicable

V.    Statement of Claim:

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Plantiff, Marcus R. Burton, Sr., ("Burton") is a individual in custody ("IIC") at the Dixon Correctional Center, ("Dixon") Burton brings this action on his own behalf who with serious medical conditions was denied Access to shower/programs and or services. Burton was retaliated against for writing grievances who required treatment and was continually delayed and denied that treatment. Burton brings this Action against CNA Danielle Hoffman ("Hoffman"), Illinois Dept. of Corrections ("I.D.O.C.") I.D.O.C. Director LaToya Hughes ("Hughes") Warden Andrea Tack ("Tack"), Warden Arthur Manzzano ("Manzzano") HealthCare Unit Administrator Monica Carpenter ("Carpenter"), Americans with Disabilities Act Coordinator Ms. Perez ("Perez") Wexford HealthCare Sources Inc. ("WHCS") Sgt. Christopher Wheeler ("Wheeler"), Sgt. Jonathan Frederick ("Frederick") Sgt. Mitch Wakeley ("Wakeley"); Sgt. Conley ("Conley"), Sgt. Potter ("Potter"), C/o Dylan Schopp ("Schopp") C/o Powers ("Powers") C/o Jonathan Piper ("Piper"), Intel C/o Megan Skryzpinski ("Skryzpinski") C/o Tristan Shaw ("Shaw") C/o Ackert ("Ackert") Dr. Larry Ob Sy ("Dr. Sy") NP

SUSAN Tuell ("Tuell"), NP Chelsa Sword ("Sword")
RN Laura Emmole ("Emmole"), RN S. Jackson ("Jackson")
RN Sproles ("Sproles"), RN Forbes ("Forbes"), CNA Haley
DeCrane ("DeCrane") CNA Whitney Wilson ("Wilson"), CNA
Joseph Bonnell ("Bonnell"), CNA Grossman ("Grossman")
Grievance Counselor B. DeNeve ("DeNeve") OMHS Amy
WATSON ("WATSON"), ARB Jon Loftus ("Loftus") states
as follows:

## Jurisdiction

1. This action is brought pursuant to 42 U.S.C § 1983
and to redress violations of his rights under the Eighth
Amendment to the United States Constitution to be free from
cruel and unusual punishment; Retaliation, in violation
of 42 U.S.C § 1983 under the First Amendment, Failure to
Intervene, in violation of 42 U.S.C. § 1983, the Fourteenth Amend-
ment equal protection Class-of-one clause rights. Also federally
protected rights under the ADA, 42 U.S.C §§ 12101 - 12132(a)(b)
et seq. and Section 504 of the Rehabilitation Act ("RA")
of 1973, 29 U.S.C § 794 et seq. and Title III of ADA, 42 U.S.C §
12,182(a),
as well as Burton's state protected rights under the Civil
Rights Remedies Restoration Act. 775 ILCS 60/5 Intentional
Infliction of Emotional Distress, Negligent or Willful and

VI.    Relief:

7.

Privacy Act,
Wanton Conduct, pursuant to supplemental jurisdiction.

2) Jurisdiction is founded on 28 U.S.C §§ 1331 and 1343,
29 U.S.C § 794 a (a)(2), and statutory and Constitutional
provisions.

3) VENUE is proper pursuant to 28 U.S.C § 1391(b)(2) as
the operative facts giving rise to BURTON's claims arose
in the Northern District of Illinois, WESTERN Division.

4.) BURTON has either pursued and exhausted any applicable
grievance procedures or pursuit of any grievances pursuant
to the applicable grievance procedures would be completely
fruitless.

                              Parties

5.) Plantiff Marcus R. Burton Sr. is forty-eight years
old. He is currently incarcerated at all relevant times
in the DixonCC, Lee County, Illinois.

6.) Danielle Hoffman is a certified nursing assistant who
provides medical assistive services to IIC's and is employed
by WHCS at Dixon. At all times relevant hereto, Hoffman
was acting under color of law and pursuant to that authority
as a CNA. Hoffman is being sued in her individual and
official capacities.

7.) LaToya Hughes is the Acting Director of I.D.OC. She
has the responsibility for FDOC's policies and procedures
and the administration of all correctional facilities in the state
of Illinois. At all times relevant hereto, Hughes was acting
under color of law and pursuant to authority as Acting Director
Hughes is being sued in her official capacity.

(8)

8.) Illinois Dept. of Corrections is the institution in charge of facilitating the operating the department of Corrections as a whole and is the public entity involved in that department's day to day operations. BurtoN sues I.D.O.C in its official capacity on claims arising under the RA, 29 U.S.C § 794 et seq.

9.) Andrea Tack is the Chief Administrative Officer (CAO) & Warden of Dixon CC in charge over the prison. Tack is, upon information and belief, believed to be intimately involved in the running of the institution and its day to day operations. At all times relevant hereto, Tack was acting under color of law pursuant to authority as CAO. Tack is being sued in her individual and official capacities.

10.) Arthur Manzzano is the Warden of Programs in charge of programs at Dixon CC. Manzzano, upon information and belief, is intimately involved in the running of the programs at the institution. At all times relevant hereto, Manzzano was acting under color of law pursuant to authority as Warden of Programs. Manzzano is being sued in his individual and official capacities.

11.) Monica Carpenter is the Healthcare Unit Administrator and is a registered nurse who is employed by ~~the state~~ the state. She runs and operates the Healthcare Unit at Dixon cc, and helps provide medical care and/or services to TIC's at the prison. At all times relevant hereto, Carpenter was acting under color of law and pursuant to Authority as HCUA. Carpenter is being sued in her individual and official capacity.

(9)

12.) Ms. Perez is the Americans with Disabilities Act Coordinator, providing services to Dixon IIC's and is, upon information and belief, employed by the State. At all times relevant hereto, Perez was acting under color of law pursuant to the authority as Dixon, ADA Coordinator. Perez is being sued in her individual and official capacities.

13.) Wexford Healthcare Sources Inc., is a Pennsylvania company, that contracts with IDOC to provide medical healthcare at IDOC prisons, including Dixon. Burton is suing WHCS in its official and individual capacities.

14.) Christopher Wheeler is a corrections officer with rank of Sergeant, and is, upon information and belief, employed by Dixon/and/or IDOC. At all times relevant herto, Wheeler was acting under color of law and pursuant to that authority as a sergeant. Wheeler is being sued in his individual and official capacitys

15.) Mr. Conley is a corrections officer with rank of Sergeant, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Conley was acting under color of law and pursuant to that authority as a sergeant. Conley is being sued in his individual and official capacities.

16.) Mitch Wakeley is a corrections officer with rank of Sergeant, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Wakeley was acting under color of law and pursuant to that authority as a sergeant. Wakeley is being sued in his individual and official capacities.

(10)

17.) Mr. Potter is a corrections officer with rank of sergeant, and is upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Potter was acting under color of law pursuant to that authority as a sergeant. Potter is being sued in his individual and official capacities.

18.) Jonathan Frederick is a corrections officer with rank of sergeant, and is upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Frederick was acting under color of law and pursuant to that authority as a sergeant. Frederick is being sued in his individual and official capacities.

19.) Dylan Schopp is a corrections officer, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Schopp was acting under color of law pursuant to that authority as a corrections officer. Schopp is being sued in his individual and official capacities.

20.) Tristan Shaw is a corrections officer, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Shaw was acting under color of law pursuant to that authority as a corrections officer. Shaw is being sued in his individual and official capacities.

21.) Megan Skryzpinski is a corrections officer, and is upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Skryzpinski was acting under color of law pursuant to that authority as a corrections officer. Skryzpinski is being sued in her individual and official capacities

(11)

22.) Jonathan Piper is a corrections officer, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Piper was acting under color of law and pursuant to that authority as a corrections officer. Piper is being sued in his individual and official capacities.

23.) Mr. Powers is a corrections officer, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Powers was acting under color of law and pursuant to that authority as a corrections officer. Powers is being sued in his official and individual capacities.

24) Mrs. Ackert is a corrections officer, and is, upon information and belief, employed by Dixon and/or IDOC. At all times relevant hereto, Ackert was acting under color of law and pursuant to that authority as a corrections officer. Ackert is being sued in her individual and official capacities.

25.) Dr. Larry Ob Sy is a certified General Practitioner who provides medical-related services to IIC's and is, upon information and belief, employed by WHCS/and or Dixon. At all times relevant hereto, Sy was acting under color of law pursuant to that authority as a medical doctor. Sy is being sued in his individual and official capacities.

26.) Susan Tuell is certified nurse practitioner who provides medical related services to IIC's, and is, upon information and belief, employed by WHCS and/or Dixon. At all times relevant hereto, Tuell was acting under color of law pursuant to that authority as a nurse practitioner. Tuell is being

(12)

sued in her individual and official capacities.

27.) Chelsa Sword is a nurse practitioner who provides medical-related services to IIC's, and is, upon information and belief, employed by WHCS and/or Dixon. At all times hereto, Sword was acting under color of law and pursuant to that authority as a nurse practitioner. Sword is being sued in her individual and official capacities.

28.) Laura Emmole is a registered nurse who provides medical-related services to IIC's, and is, upon information and belief, employed by WHCS and/or Dixon. At all times hereto, Emmole was acting under color of law and pursuant to that authority as a registered nurse. Emmole is being sued in her individual and official capacities.

29.) Mr. Sproles is a registered nurse who provides medical-related services to IIC's, and is, upon information and belief, employed by WHCS and/or Dixon. At all times relevant ~~hereto~~ hereto, Sproles was acting under color of law and pursuant to that authority as a registered nurse. Sproles is being sued in his individual and official capacities.

30.) Ms. S. Jackson is a registered nurse who provides medical-related services to IIC's, and is, upon information and belief, employed by WHCS and/or Dixon. At all times relevant hereto, Jackson was acting under color of law and pursuant to that authority as a registered nurse. Jackson is being sue in her individual and official capacities.

31.) Ms. Forbes is a registered nurse who provides medical related services to IIC's, and is, upon information

(13)

and belief, employed by WHCS and/or Dixon. At all times relevant hereto, Forbes was acting under color of law and pursuant to that authority as a registered nurse. Forbes is being sued in her individual and official capacities.

32.) Haley DeCrane is a certified nursing Assistant who helps provide medical-related assistance to IIC's and is, upon information and belief employed by WHCS and/or Dixon. At all times relevant hereto, DeCrane was acting under color of law and pursuant to that authority as a certified nursing assistant. DeCrane is being sued in her individual and official capacities.

33.) Whitney Wilson is a certified nursing Assistant who helps provide medical-related assistance to IIC's, and is, upon information and belief employed by WHCS and/or Dixon. At all times relevant hereto, Wilson was acting under color of law and pursuant to that authority as a certified nursing assistant. Wilson is being sued in her individual and official capacities.

33.) Joseph Bonnell is a certified nursing Assistant who helps provide medical-related assistance to IIC's, and is, upon information and belief employed by WHCS and/or Dixon. At all times relevant hereto, Bonnell was acting under color of law and pursuant to that authority as a certified nursing Assistant. Bonnell is being sued in his individual and official capacities.

34.) Mrs. Grossman is a certified nursing Assistant who helps provide medical-related assistance to IIC's, and is, upon information and belief employed by

(14)

WHCS and/or Dixon. At all times relevant hereto, Grossman was acting under color of law and pursuant to that authority as a certified nursing Assistant. Grossman is being sued in her individual and official capacities.

35) Mrs. B. DeNeve is a grievance counselor who responds to IIC's grievances at Dixon, and is, upon information and belief, employed by IDOC and/or Dixon. At all times relevant hereto, DeNeve was acting under color of law and pursuant to that authority as a grievance counselor. DeNeve is being sued in her individual and official capacities.

36.) Amy Watson is certified mental health specialist who provides mental health related services to IIC's, and is upon information and belief, employed by WHCS and/or Dixon. At all times relevant hereto, Watson was acting under color of law and pursuant to that authority of certified mental health specialist. Watson is being sued in her individual and official capacities.

37.) Jon Loftus is an administrative review board member who looks over grievances at final level, and is, upon information and belief, employed by IDOC. At all times relevant hereto, Loftus was acting under color of law and pursuant to that authority of administritive review board member. Loftus is being sued in his individual and official capacities.

(15)

## Facts and Allegations

38.) Burton has a physical disability and uses a wheelchair for mobility. He has been incarcerated at Dixon since December 28th 2023.

39.) Burton endures constant pain due to degenerative joint disease in both hips with avascular necrosis. Burton's hips are rubbing "bone on bone" with no blood flow and, at times legs go numb and suffer excruciating shooting pain.

40.) Burton endures constant pain due to degenerative joint disease in his right shoulder and is subject to numbness and a radiating constant pain resulting from torn rotator cuff and labrum. In addition limiting his range of motion in his right shoulder.

41.) Burton also suffers from severe bacterial and fungal rashes and/or cellulitis in between his thigh areas and buttocks resulting in severe burning and boils.

42.) Burton also suffers severe degenerative joint disease in his knees. Before Burton's incarceration his primary care physician was considering replacing his right knees but hip issue became top priority.

43.) Burton suffers from morbid obesity which exacerbates all his other ailments and is unhealthy in itself.

(16)

44.) On 5/3/24, 5/4/24, 5/21/24, 7/17/24, 7/19/24, 7/22/24, 8/9/24, 8/10/24, 8/12/24, 8/13/24, 8/15/24, 8/29/24, 9/1/24, 10/21/24, 10/23/24, 10/25/24, 10/28/24, 10/30/24, 11/1/24 and also with institutional lockdowns causing longer delays. Defendants IDOC, Hughes, Tack, Manzzano, Carpenter, Sy, Perez, Wheeler, Wakeley, Conley, Ackert, Schopp, Shaw, WHCS, Tuell, Sword, Emmole, Forbes, Jackson, Sproles, Hoffman, DeCrane, Wilson, Grossman. On these dates and segregation stays to defendants knowingly utilized sadistic and malicious conduct of intentionally denying plantiff access to his daily allowed right to shower because of plantiffs disability. This is in comparison to all other 18-19 IIC's with wheelchair accommodating disabilities housed with him, similarly situated but have access all day to shower/program/and/or service.

45) Defendant's sadistic and malicious unwarranted cruelty of shower denials caused plantiff to suffer the development of additional and is worsening rashes, boils, cellulitis that have now enveloped my entire groin area. All the old and new sores continue to cause plantiff severe pain including burning, stinging and itching sensation in violation of his constitutional rights. because of his disability.

46.) So that the court doesn't think this is a "threadbare" citation of plantiffs complaint, plantiff will go into further detail by explaining each event as it happened, in chronological order.

47.) On 12/28/23, Plantiff was transferred to Dixon CC on a ADA medical transfer from Centralia CC. Plantiffs transfer orders indicated that he was transferred because

(17)

of ADA Bed, ADA Shower, and ADA Accommodations. Moreover, plantiff was transferred with his own personal shower chair from Centralia CC. After arriving at Dixon CC plantiff tried accessing the shower on the wheelchair side of the Healthcare Unit 2nd Floor, but plantiffs bariatric shower chair was to big to fit This was either on 12/28/23 or 12/29/23. Plantiff knew that he couldn't use the shower chair in the stall because he had previously broken (2) two of the same style in Centrailia cc. Furthermore, in September 2024 plantiff would break shower chair because bariatric shower was broken and he tried using wheelchair sides shower.

48.) HCUA Cristine Vinyard from Centralia CC to plantiff that Dixon CC had a large bariatric shower, and that his shower chair would fit into. So on approximately 12/29/23 or 1/2/24 plantiff asked HCUA Monica Carpenter verbally if he could use the larger handi-capped shower on the infirmary side of the healthcare unit and she said yes.

49.) So everything was copasetic until the end of April beginning of May. This is when plantiff would ask (5) five day officer Ackert on the 7am-3pm daytime shift if he could shower. Ackert's reply would be CNA's said not today. Then on the 3pm-11pm evening shift the (5) five day officer Shaw would say CNA's said no showers tonight.

50.) Then around 5/3/24 - 5/4/24 it all came to a head when Hoffman told Shaw that your guys on wheelchair side can't take showers tonight. This had already taken place previously (7) seven to (M)eight

(18)

times, and on this occassion plantiff informed shaw that Hoffman was denying him of a shower/program/and/or service, that other similarly situated TTC's were receiving. And that she was in violation of plantiffs (USC) and ADA/RA rights because of his disability. Shaw then proceeded to tell Hoffman what plantiff said. He came back with a smurk on his face saying "she's pissed" and she's going to deny you showers all the time. From that day forward it has been hell trying to access the showers.

51.) On 5/5/24 plantiff submitted an institutional grievance on the abovementioned discriminatory denial of shower/program/and/or service. Plantiff also sent an emergency request slip to Carpenter asking to have a shower permit issued [Exhibit ]. This would mandate plantiff receive access to the daily shower program/and/or service available to every other similarly situated wheelchair TTC and wouldn't be discriminated against because of his disability.

52.) On 5/9/24 plantiff was provided with a copy of said permit [Exhibit B ] for shower, program and/or service in addition to a copy being placed in the officers bubble to make staff aware of plantiffs permit for his welfare and safety.

53.) On 5/16/24 plantiff was placed in segregation, in cell #36 of the infirmary wing right in front of the nurses station. One morning following plantiffs placement in seg, plantiff noticed counselor Deneve showing defendants Emmole, Hoffman, and DeCrane a grievance plantiff had written. Upon information

(19)

and belief, DENEVE was asking mitigating questions about said grievance and making the abovementioned aware of the situation by her being a former corrections officer and being impartial to staff.

54.) When DeNeve noticed plantiff in observation cell behind her she reacted as if she had seen a ghost, and left a quickly as she came.

55.) That same night Grossman and Wilson came in and were extremely upset yelling and barking insults at plantiff. Plantiff was maliciously, malevolently, and insidiously ridiculed and harassed by the abovementioned defendants saying you'll never take a shower now. This line of retaliation was sparked by DeNeve's careless actions through her earlier meeting, telling Emmole, Hoffman, & DeCrane about what plantiff said about CNA's in grievance They inturn relayed this information to the night shift Forbes, Grossman, and Wilson, who were furious and became extremely aggressive and beligerent towards me.

56.) Furthermore, From 5/17/24 onward plantiff has been excluded from programs, benefits, and/or services because of his disability. Plantiff has also gone thru an exorbitant amount of pain due to cellulitis, bacterial, fungal rashes, boils, burning bleeding and draining in his inner thigh area and buttocks area. Plantiff has begged and pleaded with the medical staff to be sent to dermatologist skin specialist. But defendants refuse to send plantiff and keep him on same ineffective regimen.

(20)

57.) Plantiff has intentionally been denied and treated differently from others similarly situated, and there is no rational basis for the difference in treatment. Also the refusal to accommodate plantiffs disabilities has kept him from showers, programs, and/or services on the same basis as other IIC's. Moreover, the inability of disabled IIC's to access prison services on the same basis as similarly situated IIC's or as non-disabled IIC's means the prison IDOC, Dixon CG and/or (CAO) Tack has failed to provide reasonable accommodations.

58.) Since 5/17/24 plantiff has been hit with a barrage of insults, name calling, and harassment by defendants Forbes, Jackson, Emmole, Hoffman, DeCrane, Wilson, Bonnell, Shaw, Ackert, Schopp, Wakeley, Wheeler, Potter, Carpenter, Perez, Tack, Conley, Piper, Watson, Tuell, Grossman, Frederick, plantiff Burton was denied access & deprived of shower, program, and/or service because of his disability. And because plantiff wrote many grievances on abovementioned defendants he was retaliated against by those defendants

59.) Hower, being in fear of writing more grievances Plantiff was forced to write many more grievances, because of CNA's such as Hoffman and DeCrane denying plantiff showers on these dates he has record of 5/3/24, 5/4/24 and 5/5/24. Plantiff also missed several showers in June and July that Grossman, Emmole, Wilson, Forbes, and Jackson have denied plantiff access to because of his disability.

(21)

60.) In May on 5/27/24 Grossman denied plantiff a shower while he was in seg, while in seg plantiff is supposed to receive showers on M-W-F. Plantiff lied on disciplinary ticket saying plantiff blew kisses at her ticket #202401884/1, grievance number is K0016-0524-4574. Plantiff was then denied shower on memorial day because of his disability

61.) On 8/9/24 Ackert & Hoffman refused plantiff shower, 8/10/24 Hoffman refuses plantiff shower, on 8/12/24 plantiff is denied shower doesn't know who CNA is, on 8/13/24 Sgt. Wheeler denies plantiff shower, on 8/29/24 Jackson & Grossman, Shaw refuse plantiff shower, 9/1/24 DeCrane denies plantiff shower because of his disability.

62.) Then between 9/12/24 thru 9/25/24 the big bariatric shower in the infirmary is broken. Planitiff is issued new Dynanex soap by Sword which was working with showers before they were broken now washing in the sink feels like just spreading the cellulitis, boils, and/or rashes and going against the grain. As Sword put in medical notes never said soap working very good in sink washing only in shower but really haven't been able to assess do to being in seg and level one lockdowns,

63) Hoffman on 9/27/24 tells Schopp that she's feeling good today and I may take a shower. On 9/29/24, according to Schopp, DeCrane is working, and plantiff @ 10:25 am asks Schopp to ask DeCrane what would be the best time for plantiff to shower. She advised Schopp that she would let him know either way if I could or couldn't shower, but him nor her ever

(22)

responded back to plantiff. On 10/4/24, upon information and belief, Schopp and DeCrone, & Frederick denied plantiff shower on A.M. shift. On 10/4/24 P.M. shift plantiff begged Conley to allow him to take a shower but he denied plantiffs pleas. On 10/7/24 plantiff was denied shower by Jane or John Doe who was working, and then by Wakeley on 10/16/24 which resulted in excessive force which will be mentioned in another count.

64.) Spoke with Mental Health Watson on 10/19/24, she came to see plantiff while he was on a suicide watch for not being allowed to shower along with other issues. Plantiff explained to Watson he was on this watch because of constant denial of shower/program, and/or services. Her response was that out of all the other 900+ IIC's including the similarly situated wheelchair IIC's. That plantiff should be reasonable to infirmary IIC's (who have access to showers and baths during level I lockdowns & lockdown) if that means he has to wash up in the sink everyday, even though plantiff has a disability and can't reach his feet or back to wash. [Exhibit     ]

65.) On 10/21/24 thru 11/4/24 shower is broken again forcing plantiff to have to wash in sink and infirmary staff not providing him with reasonable accommodations such as access to bath tub or providing him water basin to wash his feet in. Sword said she wasn't going to give plantiff basin to wash his feet in,

(23)

66.) On 5/30/24 plantiff is denied access to shower by Forbes. She puts in plantiff medical notes that he banged on window standing for and hour which is a fallacy because plantiff cant stand for approximately 5-10 minutes at that because the pain hurts so bad.

67.) On 7/17/24 Emmole snatches plantiffs shower permit out of his hands because of Hoffmans denial of shower when he tries to present to officers. That morning Emmole gets Tuell to change plantiffs permit to say only when infirmary and security's schedule permits shower [Exhibit B]. The grievance # K0016-0724-5274 [Exhibit D] explains how Hoffman lies and says she has to give III. Eric Bernard #R-25398, a shower who can't take showers because of his disability. Hoffman has C/o Jacobs remove plantiff out of shower before he begins showering.

68. On 8/9/24 @ approximateley 1:45pm plantiff asked c/o Rude about taking a shower and his response was CNA's said No meaning (Hoffman & or De Crane). C/o Rude said he didn't understand because they got off in (15) fifteen minutes and plantiff wondered the same thing [Exhibit E]

69.) Then on 8/10/24 Jovan Torbert who resides on ADA wheelchair side 2ND floor, who was given permission by Hoffman to shower on this date while Burton was denied access to similarly situated shower, program, and/or service. This was an intentional target for official harassment by Hoffman and that harassment is clearly motivated by personal

(24)

animus and/or malice.

70.) This is a pattern of deliberate beratement and constant unconstitutional harassment especially by Hoffman, Wilson DeCrane, Grossman, Schopp, and Wheeler. They have knowingly intentionally treated plantiff differently from others similarly situated including (Jovan Torbert) who plantiff has a signed affidavit from corroborating the abovementioned defendants action. Where there is no rational basis for a difference in or unequal treatment.

71.) Then Grossman, Forbes, and Wilson would turn on the lights in the middle of the night while plantiff was sleep in cell #36. They would then bring out a full blown dementia patient who would make loud, annoying, and obnoxious sounds to wake patient up at 4:30am. Shaw, Forbes, Grossman and Wilson would talk about plantiff, and then turn off plantiffs lights while he was reading or writing. When Grossman Forbes, and Wilson thought plantiff was sleep they would refer to him as a child molester, sexual predator, and fat black nigger, upon information and belief. Grossman has been suspended before for using racial epithets such as the N-word at Dixon CC.

72.) These abovementioned defendants have continually, repeatedly and intentionally on numerous occassions denied plantiff Burton access to his U.S.C class-of-one similarly situated shower, program, and/or service causing him severe pain and further injuries. In particular Forbes and Grossman would harass and antagonize plantiff asking him for his permit on one occassion asking him for his IDOC identification card. Plantiff

( 28 )

Would produce said permit [Ex.B] to these women and show them the expiration date is 5/29/25, but the defendants insisted on harassing plantiff asking for the permit when the new nothing changed. Furthermore, c/o's bubble has a copy of plantiffs shower permit and defendants can ask daily c/o's for copy of his permit.

73.) On several grievance responses plantiff received back from Carpenter [Exhibit E] she would say grievant housed on 2nd Floor ADA wheelchair side shower bath utilized for infirmary patients first and that security dictates movement of 2nd floor ADA wheel-chair side. Carpenter exaggerates telling untruths because CNA's & RN's dictate movement because if they tell c/os - security plantiff cant shower that cancels movement and showers not the other way around.

74.) Plantiff has put Tuell, Sword, Sy, Carpenter and Perez on alert by writing several grievances about how the denial of showers in grievance is affecting plantiffs skin condition and its worsening resulting in exacerb-ated cellulitis, boils, and bacterial/fungal rashes in buttocks thigh area. Plantiff has also put in the medical request slips regarding the same issues. To no avail plantiff is still denied access to his shower, program, and/or service. Plantiff has also put Tack and Manza-nno on alert by writing a letter regarding not being able to access shower to the Governors Office of Constituent Affairs [Exhibit F] and writing emerg-ency grievances deemed non emergency.

(26)

75.) Plantiff has done his due diligence on alerting the officials of whats going on and exhausting his remedies

76.) On 5/23/24 @ approximately 9:45am - 10:00am a puddle of water had accumulated in front of Plantiffs cell door that was leaking from the ceiling. Unbeknownst to plantiff, as he got out of bed to ask what time it was to another ITC. Plantiff suddenly slipped and fell to the ground bumping his head on the ground injuring his neck, right shoulder, and right hip. Plantiff yelled out loudly in excruciating agonizing pain for help. Plantiff screamed for about 25-30 minutes before an ITC put nurses station on alert that Plantiff was under duress. Still no one came, and plantiff felt a large contusion on the back of his head and felt concussed and dizzy.

77.) The first person who arrived to plantiffs cell was %oPowers ("Powers"). This was plantiffs first interaction with this officer, but plantiff tried explaining to Powers how he had gotten himself into this awful conundrum. Powers immediately became surly and aggressive towards Burton saying that he was lying, faking; and assuming how plantiff fell at cell door when sink and commode were behind him. Plantiff tried showing defendant where water was dripping from the ceiling but Powers refused to investigate and created his own narrative. Powers then stated "you got your big ass down there, now get your big ass up from there." Powers then suddenly left, and plantiff continued laying on the floor screaming and yelling for help.

78.) Now to add insult to injury Powers returns 5-10 minutes later with RN Sproles ("Sproles"), DeCrane, and Hoffman. They all come out of the nurses station pointing fingers, fat shaming, laughing, ridiculing

(27)

harassing, belittling, and antagonizing Plantiff as he lay on the floor in pain begging, pleading, and asking his oppressors for there empathy and help. Furthermore, plantiff is still laying on the ground while the abovementioned defendants disappear still in excruciating pain yelling for help.

79.) Then at approximately 12:50pm - 1:30p.m, a Sgt. Dahlstrom ("Dahlstrom") appears at plantiffs cell saying absolutely nothing. She suddenly breaks IDOC protocal by nefariously allowing TIC Birdsall into plantiffs cell while he is on Seg status. Moreover, unbeknownst to DeCrane who is standing behind nurses station door plantiff can see and hear her trying to whisper orders to Birdsall. While Birdsall is being coached by DeCrane on what to say, Birdsall tells plantiff no one is coming and staff isn't calling a medical code. Birdsall then says no one wants to help you because of your size so your going to have to do it on your own. Another 15-20 minutes transpires and Birdsall adamantly and forcefully pushes plantiffs wheelchair over to him and says get into the chair. Plantiff tells Birdsall he cannot get into chair, and no one else was coming and they were not calling a code. Plantiff asks Dahlstrom to call a code but she ignores him fails to intervene and doesn't even acknowledge plantiff. So after about 30 minutes plantiff contorts himself just enough to gain access to chair and uses all the strength he can muster.

80.) Plantiff after painful ordeal of getting back in wheelchair asks Sproles for his afternoon meds and to please call a medical code because plantiff felt dizzy and had a knot on the back of his head with his neck, hip, and shoulder hurting. Sproles said he wasn't

(28)

going to do anything or call anyone and to deal with the pain. RN Sproles then became very agitated and aggressive towards plantiff threatning to put him on a suicide watch.

81.) Moreso, at around 1:55pm - 2:15pm plantiff asked for a crisis team and Powers tells plantiff that he is a mental health professional. A lay person as well as Powers could see that this was a conflict of interest, but Powers persisten to continue with his crass treatment of oppression, repression, mental anguish, physical and psychological pain and torture. Powers told plantiff that he was the only mental health professional available so plantiff spoke with him regarding his dilemma. Powers didn't take any notes or log any mental health notes for plantiff on information and belief. Once Powers left with his repulsive shenanigans, plantiff saw Wexford Nursing Supervisor Jackie Hull and alerted her to get him a crisis team.

82.) About (5) five minutes passed before OMHs Nichols arrived on the seen that day. Plantiff explained to OMHS Nichols ("Nichols") the events that had transpired and she documented everything plantiff explained to her in his mental health records. Importantly, Nichols documenten the abuse plantiff had endured, plantiffs denial of access to healthcare, healthcare providers, and access to mental health specialist/professionals. That the abovementioned defendant's not only denied plantiff access to a Doctor or Nurse Practitioner, but failed to call a medical code due to plantiffs morbid obesity.

83.) On information and belief, the abovementioned defendants Powers, Spoles, DeCrane & Hoffman willingly knowingly, maliciously and intentionally denied plantiff medical attention because of past grievances, one in

(29)

particular on 5/5/24 and retaliation grievances
This delay in medical treatment was for (6) six
days until plantiff saw NP Tuell ("TUELL") and
then (10) days for X-ray of neck and right hip not
the right shoulder. RN WESSEL ("WESSEL") WHEN
she worked is the one nurse that documented and
felt contusion on the back of plantiffs head.
Plantiff asked RN's Jackson, Emmole, Emmans,
and Ingalls to do the same, they all said they did
but never documented in plantiffs medical notes.
Only one who documented record is Wessel [Exhibit G].
74.) Plantiff along with his mother Dr.
Sarah J. Burton sent correspondence to the Governor's
Office of Constituent Affairs about the abovementioned
horrific incident. In Response Warden Tack ("TACK")
replied that plantiff may have lowered himself to the
ground, not giving a definitive answer. [Exhibit H]
Furthermore, on 5/23/24 a medical note is entered
barely legible also trying to discredit plantiff. Plantiff
doesn't recognize signature but it should belong to
either Sproles, Hoffman, or DeCrane and it is dated
5/23/24 @ 10:35 am [Exhibit I]
75.) Moreover in a grievance plantiff submitted on
5/23/24 K0016-0524-4462 [Exhibit J] Counselor B.
Deneve tries to insinuate that someone saw plantiff
lower himself to ground. Then in grievance K0016-0624-
4941 [Exhibit K] grievance was placed on 6/26/24 per
internal affairs LT. McBride, to much time has passed
to request video footage of 5/23/24. Then on 6/5/24
plantiff submitted grievance K0016-0624-4663, stating
that per directive 504 grievance process can't be used
for request. [Exhibit L] Plantiff also submitted several
request slips regarding video footage but never

(30)

received a response to request slips. This EVENT WAS very damaging and humiliating for plantiff because the Corrections Officer and Medical professionals that were put in place failed to provide plantiff with any help and lacked integrity.

86.) On 5/24/24 plantiff wrote a grievance regarding cell #36 not being ADA compliant to plantiffs ADA needs, lacking handrails, grab bars, and assistive commode. Plantiff also grieved that cell was a fish bowl observation cell in violation of the privacy Act. Plantiff also put Carpenter on alert that the IIC's living and working in infirmary could look in cell, Mental Health staff, Nursing staff, prison tours both male and female could look into plantiffs cell while plantiff was urinating defecating, and washing his body in the sink. At this particular time plantiff was in cell #36 from 5/17/24 thru 6/4/24.

87.) While in cell #36 plantiff began to write grievances to ADA cummitte that were deemed non-ADA, and write request slips to ADA coordinator Perez and Carpenter due to abscence of grab bars, hand rails, and assistive commode. Plantiff complained because he had to contort, twist, & turn his body in awkward positions severely hurting his already degenerative joint disease in his hips and shoulder. Plantiff suffered alot of wanton unnecessary physical pain to his right shoulder and his hips because Carpenter and Perez's refusal to provide him with reasonable accommo-dations.

88.) In grievance and medical notes, grievance # K0016-0524-4574 [Exhibit M] Carpenter say that plantiff

(31)

has assistive devices in his cell but does explain what or where the are. Tuell doesn't write order for assistive commode until 5/29/24 so plantiff suffers from 5/17/24 until 5/29/24. Then Carpenter puts in medical notes Plantiff moved cummode out the way, this is so plantiff didn't urinate all over commode. Plantiff utilized when he had to defecate.

89.) Prior to Tuell writing order Carpenter's response on plantiffs grievance is referring to a non-stationary wheelchair and walker because those are the only other assistive devices in cell besides trapeze to bed. Plantiff then speaks with Carpenter in person and tries to impress upon her that she can accommodate him with an assistive commode, and that a walker & a wheelchair don't suffice under ADA requirements as handrails, grab bars, and a assistive commode.

90.) Not only was cell # 36 not AIDA compliant and plantiff suffered wanton infliction of pain plus cruel and unusual punishment from 5/17/24 thru 5/29/24. On 5/17/24 Hoffman and DeCrane had a medical partition placed in front of plantiff window covering the front portion of the cell and not the back portion of the cell where plantiffs sink and commode were. When plantiff writes a grievance about the partition Hoffman and DeCrane lie and say that he stares at them. Plantiff later hears DeCrane tell Ackert that plantiff Burton is a pedophile and a sexual predator which are lies. Upon information and belief, DeCrane's boyfriend Frederick shares this information with her.

91.) Now plantiff is completely exposed to female staff

(32)

coming and going on prison tours, Springfield staff such as Director Hughes, OSHA, ACLU, Equip For Equality et cetera.

92.) On 8/11/24 plantiff is placed under investigative status by Intel c/o Skryzpinski, at this point plantiff let staff know that other Sgt's and staff have left plantiff in his cell and written seg status on the door but they ignored plantiff. (~~Blankish~~) Frederick, Sgt. Simpson, Sproles, and c/o Brady know that cell #36 was not ADA compliant and a observation cell in violation of the privacy act but they didn't care, and placed me in non-compliant cell.

93.) On 8/23/24 plantiff placed in a grievance regarding how partition was always moved away from plantiff's sink and toilet area to block officers bubble to protect nurses and CNA's from being seen; leaving plantiff exposed to every male and female IDOC personnel and Wexford staff along with IIC's et cetera, I

94.) In grievance #K0016-0624-5783 [Exhibit N], Carpenter's response is rather disturbing and asinine regarding the placement of the partition. She states Verbatim " partition is available to utilize for privacy but will not be utilized if reasonable safety and security concerns arise. So CNA's and RN's vanity and to be shielded from a person who is not staring at them is more important than plantiffs privacy.

95.) Plantiff was subjected to unconstitutional conditions of confinement by staff including Carpenter and Perez, In addition to plantiff being constantly being exposed to

(33)

opposite sex such as female guards, counselors, mental health, office workers, female tours of the prison including the Warden, and male IIC's and staff who could view plantiff defecating, urinating and bathing in the sink in his nakedness. Plantiff was injured because of his pre-exisiting skin condition, humiliated, and was under emotional stress and duress. This was a violation of plantiffs privacy act conditions of confinement because adequate facilities to wash and use the toilet are among "minimal civilized measures of life's necessities that must be afforded IIC's.

96.) Upon information and belief, plantiff surmises that the abovementioned defendants whole purpose was to maliciously harass and humiliate him. Plantiff was again placed in cell #36 on 10/16/36 and is still going through the embarrassment of having to be exposed to female staff tours, etcetera. Plantiff is diagnosed with depression and Post Traumatic Stress Disorder (PTSD) and these tragic experiences are triggers for him.

97.) Then on 10/22/24 at approximately 10:30am - 10:00am plantiff asked for a suicide watch because of lack of showering. Plantiff was suffering from psychological agony and pain and wanted to go on a watch. But when Potter forced plantiff to try and wear a smock that wouldn't fit plantiff was perturbed. Plantiff refused to wear smock and asked Potter to accommodate him with an appropriate smock because plantiff weighs over 500 lbs. Plantiff tried to explain to Potter that since he was keeping his wheelchair, trapeze, and his commode that were all metal items he should be able to keep his pants.

(34)

98.) To no avail Potter said this is what plantiff wanted and this is the Attention plantiff wanted. And since plantiff had said the magical words, he was now being placed on crisis and wearing the smock. Potter forced plantiff to wear smock like a sheet and since smock was to small, plantiff was now almost naked in cell # 36. This exposed plantiffs body to all female staff, male staff, and TTC's. Also the psychological pain plantiff was already experiencing rapidly deteriorated his mental state of suicidal thoughts and depression. This was very dehumanizing, emasculating, demoralizing and humiliating and Potter just didn't care.

99.) On 10/20/24 Schopp laughed and pointed at plantiff because smock didn't fit him while he had to urinate in front of him naked. Plantiff begged and asked for a urinal but Sword, Jackson, DeCrane, Hoffman, Forbes, Emmole, and RN Inggalls all denied plantiff a urinal. Plantiff had to urinate, defecate, and bathe totally nude for (3) three days while on crisis watch. Schopp thought that it was amusing and hilarious. Schopp then ridiculed and degraded plantiff about his diagnosed degenerative joint disease in his hips. Schopp told his fellow officers, nurses, and cna's that they should take plantiffs wheelchair because he can stand, not knowing the severity of his mobility issues

100.) On 7/17/24 because of Tuells, Hoffmans, Wheelers, and Emmoles conspiring along with vicious and cunning Actions to have Plantiff shipped to general population restritive housing. Upon information and belief, they had plantiff moved to restrictive housing so they didn't have to deal with him in infirmary. This is all stemming from plantiff

(35)

trying to take a class-of one similarly situated shower program, and/or service and was intentionally denied by Hoffman. [Exhibit O]

101). The abovementioned defendants wanted plantiff to suffer severely by sending him to general population seg. Plantiff didn't have a uniform that fit and was assigned to cell #15 where the toilet was to low for him, and the bed was to low for him as well

102.) Cell #15 was not ADA compliant to plantiffs ADA needs because of only one grab bar and plantiff still had to use the toilet as a device. He had to awkward-ly put his arm behind him further injuring his right shoulder. Plus plantiff hadn't taken a shower since 7/12/24 due to level one lockdowns [Exhibit P] and plantiffs cellulitis, rashes, and boils flared up bleeding, burning and itching. They were very painful for plantiff, plantiff hadn't received his property until 7/20/24 so he was prevented to shower on the seg schedules whis is Mondays Wenesdays, and Fridays.

103.) Plantiff didn't actually take a shower until 7/22/24, so plantiff suffered severe pain without a shower from 7/12/24 - 7/22/24 which is (10) ten days which constitutes cruel and unusual punishment with plantiffs skin condition being exacerbated.

104.) Tuell knew that plantiff has bad skin problems and signed off on him being sent to seg, she is who prescribed plantiff Anti-biotics, creams, and antifungal powders. Tuell also knew that plantiff needed a trapeze to help him in bed. Do to this unnecessary and malicious shipment to restrictive housing

(36)

most of my property was lost plantiff, walker, sock aid, $1,500.00 in books, incontinence pads, wipes, creams, ointments clothes, ET CETERA.

105) Because of the nefarious actions of Wheeler, Tuell, Hoffman, and Emmole, Plantiff had Sgt Smith call over to Healthcare Unit and per Sgt. Smith she was told "That plantiffs shower chair had been disposed of." At this point plantiffs skin condition was burning and bleeding so bad that Sgt Smith suggested plantiff shower on wooden steps because he EXCEEDED weight limit of shower chairs.

106.) So plantiff could get some sort of relief to fully clean himself he took a shower on unstable wooden steps because he hadn't showered in (10) TEN days. Plantiff wrote grievance about not supposing to be in SEG in the First place and after 6½ days Carpenter had plantiff moved back to healthcare.

107.) On 7/23/24 after writing grievance to Carpenter about cell #15 in SEG not being ADA compliant and plantiff not having bariatric shower chair or trapeze. Plantiff is moved back to HCU2 - wheel chair side cell # 17 and placed on seg status. During transfer From seg to healthcare unit plantiff was ejected out of seat by wheel chair pusher Roosevelt Wilson. Plantiff is handcuffed and injures his right side of his body

108.) This is do to the cracks and uneven SIDEWALKS at Dixon CC grievance # K0016-0724-5338, K0016-0724-3010, K0016-0724-5697, and K0016-0724-5697 [Exhibit Q] plantiff puts them as one exhibit and has complained

(37)

prior about the sidewalks being horrible at Dixon.
Plantiff didn't want to get up and wanted Sgt. Ramsdell
to call a code but he kept saying we are almost to
the healthcare unit. Ramsdell and ILC Wilson kept tugging
and pulling at plantiff trying to Assist him in wheelchair.

109.) Once plantiff was placed back in wheelchair he
was taken to healthcare unit were RN King later saw
plantiff and took his vitals. Plantiff told nurse King
he was in pain, and plantiff also put in sick call.
Plantiff saw Sword on a level one lockdown and Sword
ordered xrays. Plantiffs xray of hips and ribs on his
right side showed up negative, but Sword told plantiff
he could be suffering from deep bruising because of
this fall

110.) On 12/28/23 plantiff was transferred from Centralia
cc to Dixon cc. On 1/5/24 plantiff was seen by intake
nurse at Dixon cc. Plantiff explained to nurse that he
had been waiting for an open MRI while at Centralia
and now being transferred is causing a significant delay
in him seeing or having MRI. Plantiff also explains
to nurse the same issue about orthopedic surgeon as
well. And that he has chronic pain [Exhibit R]

111.) Plantiff is morbidly obese and suffers from severe
degenerative joint disease in the right shoulder, both hips,
and both knees. On 1/18/24 plantiff asks for new medical
mattress NP says they were going to do an evaluation.
The reason plantiff supposedly transferred to Dixon is
ADA Bed, ADA shower and ADA Accommodations.

(38)

112.) Then on 1/22/24 plantiff complains of rashes and skin conditions and that his mattress is very thin for someone weighing over 500 lbs instead of ordering plantiff medical mattress he is told to ask security for one [Exhibit S] On 3/27/24 plantiff asks for medical mattress because bed is really interupting his sleep from pain. Now on 7/2/24 plantiff sees Sy tells him about bariatric bed and mattress. Sy says he has to speak with Carpenter or Regional Medical Director. Plantiff sees Sy on 8/14/24 and tells him the bed is hurting him really bad, and that Tylenol #3's no longer works tell him to look into my records. Sy says he has to speak to with Carpenter or Regional Medical Director about bariatric bed and medical mattress. [Exhibit T]

113.) Plantiff has been complaining for months about his degenerative joint disease and has seen medical regarding on these dates about hip pain & shoulder pain 2/16/24, 3/5/24, 4/1/24, 4/5/24, 4/17/24, 5/5/24, 5/9/24, 6/4/24, 7/4/24, 8/10/24, & 9/30/24. Plantiff has also placed in several grievances as well about his avascular necrosis in both hips, torn labrum and rotator cuff in right shoulder. And that these conditions have worsened since being in prison.

114) Plantiff is in severe pain every day and Sword, Tuell, Carpenter, and Sy all know of plantiff Burton's serious medical conditions and it is almost December 2024 and he still hasn't seen an orthopedic specialest or had any MRI's. Sy, Sword, and Tuell continue with the same ineffective pain management regimen.

( 39 )

115.) By re-injuring himself repeatedly in seg because of the abscence of grab bars and handrails plantiffs shoulder feels (10)x ten times worse than before. Plantiff cannot sleep on his hip (right) or his back and is forced to lay mostly on his left hip that is starting to get worse. Plantiff's pain in his right hip is starting to become unbearable to deal with and causes excruciating pain at night interrupting his sleep throughout the night.

116.) Plantiff attributes this pain to when he fell on water or when he was thren from his wheelchair because the left side used to be the worst. Plantiff explained to Sy that he used to be on hydrocodone 7.5 in the outside world because of the bone on bone and pain but he ignored me smiled and gave me an arthiritic cream called capsacian.

117.) Plantiff explained to sy that capsacian only burned his skin and that he needed to see ortho regarding injections or some alternative remedy to the chronic pain issue. Defendant said plantiff had an upcoming MRI. Plantiff explained to sy that capsacian only burned his skin not relieve any pain.

118.) Plantiff has also asked Tuell, Sy, Carpenter, and Sword for a bariatric medical bed and mattress because of pain to his hips and shoulders and they all pass the buck onto each other, while plantiff stays in constant pain. Carpenter got plantiff a trapeze, but it is for a 250 lb person & plantiff has to bend it back in place because he exceeds the weight limit

(40)

(119.) On 1/31/24, 4/5/24, 4/12/24, 5/30/24, 6/19/24, 6/21/24 7/10/24, 7/31/24, 8/17/24, 8/19/24, 9/4/24, 9/11/24, 9/18/24 and 10/2/24 plantiff saw nurse in sick call and/or medical provider regarding cellulitis, rashes, boils, and fugal or bacterial infections in the inner thigh and buttocks area. Plantiff has also written several grievances about the problems as well.

120.) Plantiff has been placed on several ineffective anti-biotics that haven't worked especially due to Hoffman, DeCrane, Grossman, Wilson, Emmole, Jackson Ackert, Shaw, Schopp, Wheeler, Forbes, Conley, and Wakeley preventing plantiff from using the shower and Carpenter; Perez for not accommodating plantiff with access to bath tub or other remedies while bariatric shower was broken.

121.) This has exacerbated plantiffs pain from the cellulitis, rashes, boils, fungal and/or bacterial problems and due to lack of showering or not seeing a dermatologist this problem persist. Plantiff has told Carpenter, Sy, Tuell, Sword, and Perez that he was seeing a dermatologist for his skin condition @ Cook County Health Systems and would like to be referred to one now. They just ignored plantiffs pleas

122.) The abovementioned defendants have put Plantiffs health & safety at risk and put him through 11 months of severe pain, mental anguish and humiliation. Plantiff had to wash his boxers by hand before placing them in the washing machine due to blood stains, black marks from skin rubbing off, and foul odors because of boil drainage.

(41)

123.) Plantiff has also placed in several sick calls for (7) seven day shower permits but has had no response to his requests. Plantiff was placed on dynanex soap by Sword, but due to lack of showering don't know if its working or not. Also wrote grievance about LGBTQIA community getting special times to shower and on level one lockdowns Deneves response [Exhibit U], which is discriminatory against plantiff who has legitimate medical issues and not gender dysphoria was given a bizzare answer.

124.) Both medical issues of degenerative joint disease and skin conditions still cause plantiff severe problems and IDOC staff and Wexford staff are doing nothing to alleviate plantiffs pain

125.) Throughout plantiffs medical records nurses, nurse practitioners, and Sy have acknowledged that plantiff is morbidly obese. On 1/5/24 it is mentioned in plantiff medical records. And due to plantiff being morbidly obese this exacerbates his skin condition and degenerative joint disease.

126.) Plantiff has difficulty, walking, standing, andlor laying down, bathing, and sleeping without pain. Plantiff requires assistive devices such as a sock aid, butt washer, hand rails/grab bars, wheelchair, walker, and assistive commode. Plantiff needs hips and right shoulder surgery.

127.) Plantiff has asked for several solutions regarding his weight. Plantiff before he was incarcerated was to have hip replacements but due to Covid his appointments got rescheduled. Plantiff has asked Carpenter, Tuell, Sword

(42)

and Sy about his weight concerns by asking them for solutions. Plantiff has asked the abovementioned defendants if he could get a gastric sleeve to lose weight, semaglutide Injections to lose weight such as Ozempic and Webovy. Dixon CC offers Ozempic but only for diabetics, they don't offer Webovy for obese inmates.

128.) Defendants have taken plantiffs walker away and don't want to provide another one due to Wexford cost cutting policy and practices. Plantiff has asked on several occassions what to due with but limited mobility and a bad shoulder at least he was able to utilize a walker to assist with ambulation and weight loss.

129.) By plantiff (being) being denied walker that is a program/benefit and/or service. Defendants have failed to put defendant on weight loss program, send him to a diet specialist, or refer plantiff to an outsioe provider to assist with weight loss.

130.) Defendants want plantiff to be sedentary, and there denial of a walker has contributed to plantiffs condition of obesity and degenerative joint disease because it has prevented plantiff from getting any excercise for a prolonged period of time, that physical therapist Sandra Ingram is suggesting.

131.) Sandra Ingram wants plantiff to ambulate more, with a walker. This denial and loss of assistive device, contributes to my morbid obesity and prevents plantiff from getting the excercise he is supposed to get. By taking away plantiffs walker defendants have prevented plantiff from maintaining any level of fitness and thus

(43)

further plantiffs inability to lose weight in even the most basic of ways.

## Count 1

(USC) Fourteenth Amendment "class-of-one equal protection & due process clause rights.

133.) Burton repeats and re-alleges the allegations in paragraphs 44 through 75, as if fully set forth here in

134.) Defendants IDOC, Hughes, Tack, Manzzano, Carpenter, Sy, Wheeler, Wakeley, Conley, Ackert, Schopp, Shaw, Tuell, Sword, Emmole, Forbes, Jackson, Sproles, Hoffman, DeCrane, Wilson and Grossman, Potter, Perez

135. These above defendants knowingly and intentionally deprived plantiff access to his daily allowed right to shower because of plantiffs disabilities on the following dates in paragraph (¶ 44). Defendants sadisticly and maliciously denied plantiff access to showers in comparison to all other 18-19 IIC's with wheelchair accommodating disabilities housed with him, similarly situated but have access to all day shower, program and/or service.

136.) The abovementioned defendants have intentionally treated plantiff differently from others similarly situated and that there is no rational basis for the difference in treatment. The Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally.

137.) Defendants sadistic and malicious acts including Sy, Tuell, Sword, Carpenter, Hoffman, DeCrane, Grossman, Schopp, Ackert,

(44)

Frederick Wheeler, Potter's continual sadistic and malicious acts caused plantiff to really suffer development of additional and worsening rashes, boils, cellulitis that have now enveloped plantiffs entire groin and buttocks area. All the old and new sores continue to cause plantiff severe pain including burning, stinging and itching sensations because of there intentional denial of plantiffs showers.

138.) Due to Defendants unlawful actions, Plantiff has suffered injuries, and has been treated differently from other similarly situated IIC's intentionally with no rational basis for the difference in treatment.

## Count II
### Title II of the ADA Against IDOC & Hughes

139.) Each of the above paragraphs is incorporated as if fully restated herein

140.) Under the Department of Justice's ("DOJ") regulations implementing Title II of the ADA "Public entities shall ensure that qualified inmates or detainess with disabilities shall not, because a facility is inaccessible to or unusuable by individuals with disabilities, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R § 35.152(b)(1).

141.) Plantiff is a qualified individual with a disability under the ADA. Plantiff has physical impairments that substant- ially limit one or more of his major life activities; or has a record of having such impairments; or is regarded as having such impairments.

(45)

142.) IDOC and/or Hughes refused Burton Access to ADA shower, program, and/or service. for six months ongoing where plantiff needs (TRO) temporary restraining order and injunctive relief.

143.) IDoc and/or Hughes and IDOC personnel allowed for Burton's walker to be misplaced, so he cant ambulate more as his physical therapist wants him to do because they refuse to replace it.

144.) Dixon CC, IDOC, and/or Hughes discriminated against Burton on the basis of his disabilities in the following way:

a.) refusing to allow him access to shower with others around him similarly situated for(6)six months ongoing.

b.) failing to reasonably accommodate his disabilities and instead discriminating against him in ways that increased the severity of his chronic pain due to degenerative joint disease by placing him in non-ADA compliant cells with no grab bars, hand rails, or assistive commode.

c.) failing to reasonably accommodate him or his disabilities but instead discriminating against him in ways that increased the severity of his chronic skin condition due to cellulitis, boils, rashes, fungal and bacterial infections.

d.) failing to reasonably accommodate plantiffs disabilities and instead denying him access to bathtub while showers were broken or reasonably accommodating him water basin, to wash his feet.

(46)

e.) failing to replace plantiffs sock aid after he returned from seg.

f.) Failing to give plantiff beriatric bed, mattress and continving to making plantiff suffer in his degenerative joint disease, after complaining about these conditions & being transferred because of these specific reasons.

144.) The ABOVE-described conduct was intentional, and defendents acted with knowing indifference to Plantiff's federally protected rights, by failing to fix sidewalks causing plantiff injuries.

145.) In acting in the manner alleged above, Dixon cc, IDOC and/or Hughes unlawfully discriminated against Plantiff in violation of the ADA.

146.) Due to Defendant's unlawful actions, Plantiff has suffered injuries including obesity do to locker being thrown away, injuring & re-injuring degenerative joint disease over and over again, exacerbating plantiffs skin condition because of not allowing him not to shower, lack of ADA accessible cell in deprivation of his rights under the law.

147.) Defendants not providing plantiff with ADA Assistive devices such as walker, sock aid, ADA mattress, ADA bariatric bed.

148.) As a proximate result of Dixon cc, IDOC, and Hughes wrongful conduct, plantiff Burton suffered immediate and irreparable harm and injury, including physical, psychological, and emotional injury. This harm will continue unless and until Defendants are ordered by this court to ensure that Dixon cc, IDOC, and/or IDOC complies with the ADA.

(47)

149.) Burton has no plain, adequate, or complete remedy at law to address the wrongs described herein

150.) Wherefore, Marcus R. Burton Sr. requests that this Court enter judgment in his favor and against defendants as follows:

    a.) an award of injunctive relief;

    b.) an award for compensatory damages in an amount to be proven at trial;

    c.) an award for court cost, and attorneys' fees; and

    d.) for such other relief that this Court deems just and appropriate.

## Count III
### section 504, Rehabilitation Act against IDOC' Hughes

151.) Each of the above paragraphs is incorporated as if fully restated herein.

152.) Section 504 provides that "no otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be exluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" 29 U.S.C § 794.

153.) Plantiff is a qualified individual with a disability under the RA. Plantiff has physical impairments that substantially limit one or more of his major life activities; or has a record of having such impairments; or is regarded as having such impairments.

154.) IDOC and/or Hughes refused plantiff Burton access to RA shower, program, and/or service for six months ongoing where plantiff needs (TRO) temporary restraining order and injunctive relief.

155.) IDOC/ and or Hughes, and IDOC personnel allowed for Burton's walker to be misplaced, so he cant ambulate more as his physical therapist wants him to do because they refuse to replace it.

156.) Dixon cc, IDOC, and/or Hughes discriminated against Burton on the basis of his disabilities in the following ways:

a.) refusing to allow him access to shower with others around him similarly situated for (6) six months on-going.

b.) failing to reasonably accommodate his disabilities and instead discriminating against him ways that increased the severity of his chronic pain due to degenerative joint disease (~~~~) by placing him in non- ADA compliant cells with no grab bars, hand rails, or assistive commode.

c.) failing to reasonably accommodate him or his disabilities but instead discriminating against him in ways that increased the severity of his chronic skin condition due to cellulitis, boils, rashes, fungal and bacterial infections.

d.) failing to reasonably accommodate plantiffs disabilities and instead denying him access to bathtub while showers were broken or reasonably accommodating him water basin to wash his feet.

(49)

e.) Failing to replace plantiffs' sock aid after he returned from seg.

F.) Failing to give plantiff bariatric bed and mattress, and continuing to making plantiff suffer in his severe degenerative joint disease, after complaining about these conditions and being transferred because of these specific reasons.

157.) The above-described conduct was intentional, and Defendant acted with knowing indifference to Plantiffs Federally protected rights.

158.) In acting in the manner alleged above Dixon cc, IDOC, and/or Hughes unlawfully discriminated against plantiff in violation of the R.A.

159.) Due to Defendant's unlawful actions, Plantiff has suffered injuries& obesity, do to his walker being taken away, injuring and re-injuring his degenerative joint disease over and over again, also exacerbating plantiffs skin condition because of not allowing him to shower, lack of ADA accessible cell in violation of the RA.

160.) Defendants have violated the RA by not providing plantiff with ADA assistive devices such as walker, sock aid, ADA mattress, and ADA bariatric bed.

161.) As a proximate result of Dixon cc, IDOC, and/or Hughes wrongful conduct, plantiff Burton suffered immediate and irreparable harm and injury, including physical, psychological, and emotional injury. This harm will continue unless and until Defendants are ordered by this court to ensure

(50)

Dixon CC, IDOC and/or Hughes complies with the RA.

162.) Wherefore, Marcus R. Burton Sr., requests that this court enter judgment in his favor and against defendants as follows :

       a.) an award for injunctive relief,
       b.) an award for compensatory damages in an amount to be proven at trial;
       c.) an award for attorneys fees and court costs, and.
       d.) For such other relief that this court deems just and appropriate.

## Count IV

Violation of the Civil Rights Remedies Restoration Act Against Defendant Hughes & IDOC

163.) Each of the above paragraphs is incorporated as if fully Restated herein.

164.) The Civil Rights Remedies Restoration Act, effective January 1, 2024, provides that a violation of section 504 of the Rehabilitation Act of 1973 (29 U.S.C § 794) and Title II of the Americans with Disabilities Act of 1990 (42 U.S.C § 12132 et seq.) "... shall constitute a violation of this Act." 775 ILCS 60/15.

165.) This Act explicitly waives the State's sovereign and Eleventh Amendment of the United States Constitution immunity to provide for complete damages for all injuries - including monetary emotional, suffering, inconvenience, and other non-monetary

(51)

losses – incurred by violation of the Act, at a statutory minimum of $4,000.00 for any violation of this Act. 773 ILCS 60/20 & 30.

166.) The above-described conduct was intentional, and Defendant acted, and continues to act, with deliberate indifference to Plantiff's federally protected rights. As a result of Defendant's unlawful actions, Plantiff have suffered injuries including the denial of services and programs that would otherwise benefit them and deprivation of their rights under the law. 775 ILCS 60/20.

## Count V

Violation of Title III of the ADA Against Wexford Healthcare Services (WHCS)

167.) Unlike Title III of the ADA, Title III of the ADA covers certain private entities.

168.) 42 U.S.C § 12182 (a). Title III of the ADA prohibits "discrimination on the basis disability in the full and equal enjoyment of the goods, services, facilities, priviledges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation." A private entity is considered to offer public accommodations "if the operations of such entities," including the "professional office of a health care provider, hospital, or other service establishment, affects commerce. 42 U.S.C 12181 (7)(F). "Commerce" is defined as "travel, trade, traffic, commerce, transportation, or communication ... among the several States."

(52)

169.) WHCS a Pennsylvania company, operations "affect commerce" because WHCS "contracts with states across the country and regularly communicates with its corporate officers and local providers in Illinois and elsewhere.

170.) WHCS contracts with IDOC prisons including Dixon to provide medical healthcare and is a private entity that offers public accommodations; they denied Plantiff services, programs and accommodations.

## Count VI

Eighth Amendment Deliberate Indifference to Burton's serious Medical Needs

a) WHCHS has a policy or practice of delaying and denying IIC's medical appointments in violation of the eighth amendment.

171.) Plantiff was scheduled for MRI in March, July, and in October all were canceled because of Wexford's policy or practice of denying prisoners access to offsite specialist. _since 11/5/24_

172.) Plantiff was scheduled for ortho consult since 9/28/23 and still hasn't seen one because of Wexford's policy or practice of denying prisoners access to offsite specialist

173.) Wexford provides no legimate care or counseling for inmates with eating disorders or obesity, in violation of their right to receive adequate medical care under the Eighth Amendment.

b.) Eighth Amendment Deliberate Indifference by Dr. Sy, NP, TUell, NP SWORD

(53)

174.) Eighth Amendment to remain free of cruel and unusual punishment resulting from intentionally allowing plantiffs skin condition to progressively get worse from ineffective medicine regimens

175.) Dr. Sy, NP Tuell, NP Sword, HCUA Monica Carpenter, knowingly and intentionally denied and/or delayed treatment of MRI, Orthopedic specialist

176.) Dr. Sy, NP Tuell, NP Sword HCUA Monica Carpenter, ADA Coordinator Perez denied and intentionally didn't allow plantiff to receive bariatric bed or mattress for his degenerative joint disease.

c.) Eighth Amendment Deliberate indifference by Cmaj Hoffman, Decrane, Grossman, Wilson, Bonnell, RN's Forbes, Jackson, Sproles Emmole

177.) The Abovementioned Defendants have knowingly and intentionally treated plantiff differently from others similarly situated, and have intentionally on numerous occassions denied plantiff Burton access to his shower, program, and/or service. Excerbating the plantiffs skin condition causing him severe pain and further injuries because of rashes, boils, and or cellulitis.

d.) Eighth Amendment Deliberate indifference by C/o's Schaп 4o Shaw, 4o Skryzpinski, C/o Ackert, Sgt. Wakeley, Sgt. Potter, Sgt. Frederick, Sgt. Wheeler, Sgt. Conley, Betty DeNeve

178.) The Abovementioned Defendants have knowingly and intentionally treated plantiff from others similarly situated, and have intentionally on numerous occassions denied plantiff Burton access to his shower, program, and/or service. Exacerbating the

54

plantiffs skin condition causing him severe pain and further injuries because of rashes, boils, and or cellulitis.

e.) Deliberate Indifference by ⁴°Powers, ²ᴺSproles, CNA Hoffman, CNA DeCrane (paragraph 76-85)

179.) The Abovementioned defendants were knowingly and intentionally deliberately indifferent when they allowed plantiff to lay on ground for 2½ - 3 hours.

180.) Defendants also were knowingly and intentionally deliberately indifferent when they caused plantiff physical pain and psychological pain by denying and/or delaying treatment to plantiff by not getting him MEDICAL ATTENTION when he slipped and fell.

181.) Defendants also were knowingly and intentionally deliberately indifferent when they failed to call a medical code or assist plantiff off of ground.

182.) Defendants also were knowingly and intentionally deliberately indifferent when they failed to call a mental health specialist and/or denied plantiff mental health attention causing psychological pain.

f.) Deliberate Indifference by Dr. Sy, NP Tuell, NP Sword

183. The Abovementioned defendants knowingly and intentionally allowed plantiffs degenerative joint disease to severely hurt plantiff, by maintaining a course of treatment that proved ineffective, and failing to send plantiff to an MRI or refer him to a specialist when his condition persisted.

(55)

184) Defendants also were knowingly and intentionally, deliberately indifferent when they kept giving plantiff the same oral medications for his skin condition & degenerative joint disease when plantiff made them aware on several sick call visits, that meds were ineffective.

185) Defendants also were knowingly and intentionally aware that plantiffs shoulder and degeneration of his hips have worsened. And on more than one occassion the plantiff received either no treatment or ineffective treatment.

186.) Defendants also were knowingly and intentionally deliberately indifferent when they scheduled plantiff MRI and knew he couldn't go to appointments because of his weight.

g.)   Eighth Amendment Violation

HCUA Monica Carpenter, RN Emmole, RN Jackson, RN Forbes, Sgt Frederick C/o Schopp, Sgt Wheeler, Sgt. Potter, C/o Shaw, Skryzpinski, NP Tuell, CNA Hoffman, CNA Grossman, CNA Decrane, CNA Wilson, C/o Ackert

187.) The Abovementioned defendants knowingly and intentionally violated plantiffs eighth Amendment rights by forcing him to bath, urinate and defecate in front of the opposite sex, IIC's, and male WHCS personnel, and IDOC employees on several occassions using partition to cover them and not plantiff

188.) Defendants Emmole, Tuell, Wheeler had plantiff sent to restrictive housing when they knew that plantiff need a bariatric shower chair, trapeze to help him turnover in bed, and his prescribed creams, ointments, and powder. And the cell wasn't ADA compliant, and Tuell still signed off on plantiff going to restrictive housing.

56

h.) Dr. sy, NP TUEll, NP sword were deliberately indifferent to plantiffs morbid obesity.

189.) The abovementioned defendants knowingly and intentionally deprived plantiff of solutions regarding being morbidly obese & exacerbating plantiff degenerative joint disease and skin condition. causing him severe pain.

190.) Defendants want plantiff to be sedentary by taking away his walker to ambulate more to get exercise

191.) Defendants have delayed and/or denied plantiff weight loss treatment from various sources such as semaglutide Ozempic & Wegovy or to send to a diet specialist.

## Count VII

### Violation of First Amendment Retaliation

a.) CNA Hoffman, CNA DeCrane, CNA Grossman, CNA Wilson, RN Emmole, RN Sproles, RN Jackson, HCUA Carpenter in paragraphs 50-75.

192.) The abovementioned defendants knowingly and intentionally retaliated against plantiff once he filed a grievance on 5/5/24. From then on, plantiff's denial of showers and harassment because of later grievances never ceased

193.) Plantiff would try to use the shower on several occassions the defendants would tell IIC Forbert to shower and not allow plantiff to shower who was on the same side, as plantiff besides.

(57)

194.) The defendants because plantiff kept filing grievances retaliation became unbearable and harsher with tickets being written, verbal harassment, psychological harassment and continual denial at showers.

   b.) Sgt Wheeler, Sgt. Wakeley, Sgt. Potter, C/o shaw C/o Schopp, C/o Piper, Intel C/o Skryzpinski, Sgt Frederick C/o Powers retaliation violation.

195.) The abovementioned defendants knowingly and intentionally retaliated against plantiff once he filed grievances on the abovementioned defendants including harassment, tickets, psychological harassment and denial of showers

196.) The defendants, because plantiff kept filing grievances, & retaliation became unbearable and harsher with continual denial of showers.

   c.) NP Tuell, RN Emmole, Sgt. Wheeler, CNA Hoffman retaliation violation.

197.) The abovementioned defendants retaliated against him by sending plantiff to restrictive housing knowing he was disabled and required bariatric shower chair, trapeze, and ADA compliant cell.

198.) The abovementioned defendants retaliated and conspired against plantiff to force him to suffer by abscence of showers and medical creams, ointments & powder.

   <u>Count IX: Intentional Infliction of Emotional Distress</u>

(58)

a.) C/o Powers, RN Sproles, CNA Hoffman, CNA DeCrane paragraphs (76-85)    IIED

199.) The Abovementioned defendants subjected plantiff to the intentional infliction of emotional distress because they were deliberately indifferent to his medical needs and mental health needs by allowing plantiff to lay on the floor for 2½ to 3 hours; ridiculing, laughing, fat shaming and insulting plantiff while he was injured. This caused plantiff to need to speak to mental because of his emotional distress. This conduct by defendants was outrageous and extreme.

b.) Dr. Sy, NP Tuell, NP Sword & HCUA Monica Carpenter violation of IIED

200.) The abovementioned defendants lack of treatments, MRI's and outside specialists on several occassions over 11 months, the defendants knew there medical treatment was ineffective causing plantiff Burton to suffer severe pain. This has caused plantiff severe emotional distress and the defendants actions are extreme and outrageous.

c.) OMHS Amy Watson violation of IIED

201). The abovementioned defendants treatment of plantiff by stating to plantiff it is not a mental health issue to shower regularly. And that plantiff shouldn't mind washing up in the sink when he cant reach his feet and has a bad skin condition that exacerbtes the pain of the condition from not showering. This has caused plantiff severe emotional distress and the defendants actions are extreme and outrageous.

(59)

d.) FDOC, Hughes, Warden Tack, Warden Manzano, HCUA Carpenter, Dr. Sy, ADA coord. Perez, Sgt. Wheeler, Sgt. Wakeley, Sgt. Conley, C/o Ackert, C/o Schopp, C/o Shaw, WHCS, NP Tuell, NP Sword RN Emmole, RN Forbes, RN Jackson, RN Sproles, CNA Hoffman, CNA DeCrane, CNA Wilson, and CNA Grossman paragraphs. (44-47) in violation of IIED

202.) The abovementioned defendants subjected plantiff to the intentional infliction of emotional distress because they continually on several occassions denied plantiff access to a similarly situated shower, program, and or service. This caused plantiff to develop rashes, cellulitis, and boils in his buttocks area & groin from lack of showering. This caused plantiff unnecessary infliction of pain and severe emotional distress, and the conduct of these defendants was extreme and outrageous

e.) CNA Hoffman, CNA Decrane, CNA Grossman, CNA Wilson Counselor DENEVE in violation of IIED RN Forbes, C/o Shaw, C/o Schopp, & Sgt. Wheeler paragraphs (70-75)

203) The abovementioned defendants viciously & maliciously attacked plantiff after filing grievances. These defendants put plantiffs life in danger saying that he was a pedophile to other IC's. Plantiffs was verbally and psychologically harassed and abused by defendants causing severe emotional distress from the actions of the individuals. They constantly ridiculed and berated plantiff in retaliation from his grievances. And continually denied him showers, dayroom, et cetera. This has caused plantiff severe emotional distress and the defendants conduct was extreme & outrageous

<u>Count X: Privacy Act ¿ Conditions of Confinement</u>

HCUA Monica Carpenter, ADA coordinator Perez, Warden Tack, Warden Manzzano paragraphs - (56-100)

204.) The abovementioned defendants violated plantiffs privacy ¿ conditions of confinement by placing him in a suicide watch observation cell leaving him fully exposed to all female staff, individuals in custody, and male staff while he defecated, urinated, and bathed in the sink. Before he received commode plantiff had to twist, contort, and put his body through unnecessary pain because of no grab bars or hand rails. And plantiffs skin condition from washing in sink and not being able to fully rinse himself in fear of being naked exacerbated his boils, rashes, and cellulitis. Plantiff being housed in this cell was humiliating especially when nurses and CNA's used a partition to cover there faces in office but not used for plantiffs privacy. This was total violation of conditions of confinement and privacy act.

<u>Count XI: Negligent or Willful and Wanton Conduct</u>

CNA Hoffman, CNA DeCrane, % Powers, ¿ RN Sproles paragraphs - (76-85)

205.) The abovementioned defendants negligently and intentionally when they deliberately left plantiff on the grounds laughed, ridiculed, and fat shamed him while lying on the ground yelling for help. There was blatant disregard where there was a failure, after the knowledge of impending danger, to exercise ordinary care to prevent it. Plantiff continued lying in pain feeling concussed with a knot in the back of his head and

(61)

pain in his right hip, neck, and right shoulder. There was a failure by defendants to discover a danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.

## Count XII: Failure to Intervene

### a.) CNA Hoffman & CNA Decrane

206.) The abovementioned defendants failed to intervene by reporting to medical staff or security staff that plantiff was being mistreated by% Powers and RN Sproles and failed to stop them or report them is a violation of plantiffs rights.

### b.) HCUA Monica Carpenter & ADA Coord. Perez

207.) The abovementioned defendants failed to intervene when they kept allowing infirmary staff to discriminate against plantiff from showering. These two officials had the authority to stop mistreatment but allowed it to continue.

208.) The abovementioned defendants failed to intervene when they allowed plantiffs to be placed in cell #36 of infirmary with no partition to cover him but allowing nursing station to use to cover there faces. Leaving plantiff exposed to all staff that passed by. They failed to intervene to have travesty stopped.

### c.) ARB Jon Loftus

209.) The abovementioned defendant allowed 30 plus grievances be denied without fully investigating the

(62)

grievances. And denying everyone even when plantiff clearly had merit and it was his mistake from not reviewing the grievances. Defendant failed to intervene and allows Dixon CC grievance staff to deny every grievance.

## Prayer for Relief

A) Wherefore, plantiff requests that the court enter a Judgment against the defendants:

1.) Grant attached Preliminary Injunction against Defendants.

2.) Declare the actions of the Defendants violated plantiff's rights & protections under the First, Eighth, and Fourteenth Amendments of the United States Constitution.

3.) Declare the actions of the defendants violated plantiffs rights & protections under the ADA and RA.

4.) Declare the actions of Defendants violated plantiffs rights afforded to them by Illinois State Tort Law pursuant to supplemental jurisdiction.

B. Issue an injunction ordering Carpenter, Perez, Hoffman, DeCrane, Grossman, Wilson, and IDOC or their agents, & WHCS or their agents to:

(1.) Immediately arrange a schedule on A.M. and P.M. shift that allows plantiff to take a shower as others similarly situated around him to take care of his hygiene and skin conditions on a regular basis

C. Issue an injunction ordering Carpenter, Perez, Dr. Sy, NP Tuell, NP Sword and/or WHCS their agents to:

(1.) Immediately arrange for plantiff a bariatric medical bed and mattress to help with pain he experiences sleeping (&) from degenerative joint disease.

(2.) Immediately arrange for plantiff to

(63)

have a walker to help him ambulate more and exercise to help with obesity.

3.) Immediately arrange for plantiff to see orthopedic specialist to be evaluated with expertise in the treatment, restoration, and function of his degenerative joint disease in shoulder and hips.

4.) Carry out without delay the treatment directed by the orthopedic specialist.

5.) Immediately arrange for plantiff to have an OPEN MRI to evaluate the severity of shoulder and hip degeneration

5.) Nominal Damages of $100.00 (USD) against each defendant jointly and severally.

6.) Compensatory Damages $100,000.00 (USD) against each defendant jointly and severally.

7.) Punitive Damages of $150,000.00 (USD) against each defendant who is sued in their individual capacity jointly and severally

8.) Emotional Distress and loss of enjoyment of Life $175,000.00 (USD)

9.) A jury trial on all issues so triable in accordance with Federal Rules of Civil Procedure Rule 38.

10.) All cost incurred by Plantiff for this suit, including but not limited to attorney's fees.

11.) Any additional relief court deems just proper & equitable.

Respectfully,

S/ Marcus R. Burton Sr.
Marcus R. Burton Sr. #Y-58041
Pro-Se

(64)

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes. VERIFICATION:

I have read the foregoing complaint & hereby verify that the matters alleged therein are true except as to matters alleged on information & belief, and as to those I believe them to be true. I certify under penalty of perjury, that the forgoing is true and correct. 28 (usc) § 1746 Executed @ DIXON Illinois on:

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 30th day of November, 2024

_Marcus R. Burton Sr._
(Signature of plaintiff or plaintiffs)

MARCUS R. BURTON Sr.
(Print name)

Y- 58071
(I.D. Number)

DIXON CC. 2600 N. Brinton Ave
DIXON, Fl 61021

(Address)

8